UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | No. 6:11-CR-15-GFVT-HAI-14 |
| v. | ) | |
| THOMAS RAYMOND ENGLE, | ) | RECOMMENDED DISPOSITION |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 903), the Court considers reported violations of supervised release conditions by Defendant Thomas "Ray" Engle. In this case, Defendant has stipulated to all violations and the parties have jointly recommended a penalty of revocation with eight months of imprisonment followed by three years on supervised release. The undersigned will recommend accepting the joint recommendation.

Judge Van Tatenhove entered a judgment against Defendant in October 2012 for conspiracy to distribute methamphetamine, conspiracy to retaliate against a government witness, and retaliation against a government witness. D.E. 627. He was sentenced to 54 months of imprisonment on each count (served concurrently), to be followed by six years of supervised release on the drug conspiracy count and three years each on the other two counts (served concurrently). *Id*. Defendant was released on May 29, 2015.

**I.**

On April 19, 2017, the USPO issued the Supervised Release Violation Report (the "Report") that initiated these proceedings. The Report charges seven violations. The first two are based on a urine specimen that was collected from Defendant on April 13. An instant test revealed the presence of buprenorphine (a.k.a. suboxone), a Schedule III controlled substance. Defendant initially denied using any controlled substance. When told that the sample would be sent to a lab for confirmation, he then admitted taking suboxone on April 12 without a prescription, and signed an admission form to that effect.

Based on this positive test and admission, Violation #1 charges Defendant with a violation of Standard Condition #7, which requires that Defendant "not purchase, possess, use, distribute, or administer any controlled substance . . . except as prescribed by a physician." This is a Grade C violation.

Relying on the same conduct, Violation #2 charges a violations of the condition requiring that Defendant "not commit another federal, state, or local crime." In light of Defendant's criminal history and the Sixth Circuit's decision that use of a controlled substance includes possession, Violation #2 charges Defendant with conduct that would be a federal crime. Such conduct would be a Class E Felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance. This is a Grade B violation.

Regarding Violations #3 and #4, the Report states:

> On April 17, 2017, the defendant reported to the probation office as instructed to discuss his recent positive drug screen. Engle was asked to provide a subsequent drug screen. Engle was initially unable to provide a urine sample. The defendant was questioned as to whether he had used any controlled substances since

his last contact with the probation officer on April 13, 2017. Engle verbally admitted that after he had contact with the probation officer on April 13, 2017, he "snorted" a Roxicodone 30mg tablet (oxycodone). When provided a Prob-4 Positive Urinalysis Admission Report to sign, the defendant refused to sign the form and indicated he believed the substance may not show up on a drug screen given the admitted date of use.

Relying on this admitted use of oxycodone, a Schedule II controlled substance, Violations #3 and #4 levy the same charges as #1 and #2 respectively, a Grade C violation for drug use and a Grade B violation for federal felony drug possession.

Violations #5 and #6 also stem from Defendant's April 17 visit to the Probation Office. While there, Defendant was asked whether he had used any controlled substances after April 13. He admitted using suboxone on April 14 "in an attempt to negate the effects of withdrawal from taking Roxicodone the previous day." Defendant refused to sign an admission form, stating he believed the substance would not be detected. Violation #5 charges a violation of Special Condition #7, which prohibits the use of a controlled substance without a prescription, a Grade C violation. Violation #6 charges another commission of felony drug possession, a Grade B violation.

Violation #7 charges that Defendant "stalled the production of a urine sample for drug screening purposes" when he failed to provide a sample during the April 17 visit. This would be a Grade C violation of Special Condition #1, which requires Defendant to "submit to periodic drug and alcohol testing at the direction and discretion of the probation officer."

## II.

The Court conducted an initial appearance pursuant to Rule 32.1 on May 9, 2017, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary

hearing. D.E. 904. At the initial appearance, the United States moved for interim detention; Defendant did not argue for release. *Id*. Based on the heavy § 3143(a) defense burden, the Court found that Defendant failed to justify release and remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on May 11, 2017, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 908. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all seven violations. *Id*. The Court accepted the stipulation, thus establishing all seven violations under the standard of 18 U.S.C. § 3583(e).

The parties presented a joint recommended sentence of incarceration of eight months, followed by three years of supervised release on Count Two (drug distribution conspiracy) and one year of supervised release each on Counts Thirteen and Sixteen (conspiracy to retaliate and witness retaliation).

## III.

The Court has evaluated the entire record, including the Supervised Release Violation Report and accompanying documents, the argument and information presented at the final revocation hearing, and the sentencing materials from the underlying Judgment. The Court has considered all of the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to a conspiracy to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1) and 846, which was enhanced to a Class B felony by virtue of a prior drug felony. He also pleaded guilty to the Class C felonies of conspiracy to retaliate against a government witness, 18 U.S.C. § 1513(f), and retaliation against

4

a government witness, *id*. § 1513(b)(2). For a Class B felony, the maximum revocation sentence provided under § 3583 is three years of imprisonment. *See* 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed."). Under § 7B1.1, Defendant's admitted conduct would qualify as a Grade B violation with respect to Violations #2, #4, and #6, and a Grade C violation with respect to Violations #1, #3, #5, and #7. Given Defendant's Criminal History Category of III (the category at the time of the conviction in this District) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is eight to fourteen months.

The parties' recommended revocation term is at the bottom of this Guidelines Range. The government justified this lenient sentence on the basis that Defendant's brief episode involving seven nearly-simultaneous violations appeared to be a spurt of "aberrant behavior" that could be related to the death of Defendant's mother earlier this year. The government characterized it as "a slip up" that "snowballed" into a cluster of closely-related violations. Defendant fell into a trap, the government argued, because he had used an opiate and then continued to use opiates—even after being caught—to deal with the subsequent withdrawal symptoms.

Aside from this recent cluster of violations, the government argued, Defendant had performed well on supervision for almost two years. And, aside from his participation in the

5

methamphetamine conspiracy, he did not have much criminal history. The government noted there was no indication Defendant used drugs while participating in the conspiracy. The government argued that eight months would be sufficient to deter future criminal conduct. The government further noted that Defendant had shown no interest in substance abuse treatment, so there was no realistic alternative to incarceration.

The government did note that Defendant had a history of violence, specifically his witness-intimidation convictions. To protect the public from this specter of danger, the government recommended three years of supervised release.

Defense counsel argued that Defendant is young, he has been working, and he benefits from a supportive family. Defense counsel argued that the death of Defendant's mother triggered a "tornado of events" that culminated in his violations. Defense counsel agreed that drug rehab was not appropriate at this point.

Defendant addressed the Court and said he agreed with what the lawyers had argued. He stated that he was not a violent person, and that he worked every day. Defendant explained that it had been "a hard time" and he kept taking opiates because he was afraid his withdrawal symptoms would cause him to lose his job.

## IV.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Here, we have three admitted uses of a controlled substance and an attempt to avoid detection by preventing collection of a urine sample on April 18. Although the Court understands that Defendant was attempting to stave off withdrawal systems and keep his job, stacking violations on top of each other, including being uncooperative with the Probation Officer, is a significant breach of the Court's trust.

The nature and circumstances of Defendant's underlying conviction are very troubling, particularly his violent behavior. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2001) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). According to the PSR, Defendant and two co-conspirators took the victim to a cemetery, where Defendant attacked the victim and kicked him wearing steel-toed boots. The victim suffered multiple external and internal injuries. Additionally, a methamphetamine trafficking conspiracy, such as the one involving Defendant, brings inherent dangers to any community. The seriousness of Defendant's conduct resulted in an upward variance from the Guidelines Range at sentencing.

Regarding Defendant's history and characteristics, he poses a clear risk of additional criminal conduct. Each instance of drug use is an additional federal felony, and the Court fears that bad decisions like using drugs could lead to other crimes of violence, given Defendant's history. On the positive side, he does appear to have been compliant with supervision for almost

two years, and has remained employed. The Court also takes into account the fact that his mother died this year and both sides recognize this was particularly difficult for him. The Court hopes the period of imprisonment will allow him to make a fresh start after release.

Regarding the need for treatment, the Court wonders whether Defendant is being honest with himself. He has denied the need for treatment, but his repeated drug use in April suggests he may have a problem with addiction. At any rate, if Defendant does need treatment, it would not benefit him until he recognizes the need for it and commits himself to change.

The factors of deterring criminal conduct and protecting the public weigh heavily in favor of revocation in this case. Defendant needs a wake-up call and continued supervision. Defendant's attempt to stall the urine sample and his refusal to sign admission forms suggests he has a bad attitude about supervision. Defendant must respect the authority of the Court and the USPO.

Another factor is the need to avoid unwarranted sentencing disparities. A sentence within the Guidelines Range is usually sufficient to address this concern.

A court also may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Offenses under 21 U.S.C. § 846 have no maximum supervised release period, meaning there is no maximum upon revocation either. Defendant clearly needs additional supervision to protect the public from his potential for violence and to deter him from backsliding into further criminal drug use. The Court finds that three years is sufficient, but not greater than necessary to meet the § 3553(a) factors in this context. To be clear, the three year term of

supervised release is attached to Count Two of Defendant's judgment. The Court accepts the recommendation of one year on both Count Thirteen and Count Sixteen, all three terms to run concurrently.

The Court emphasizes that it is unusual for a defendant to receive an upward variance when originally sentenced but then a bottom-of-the-Guidelines sentence on seven violations. Defendant is being shown leniency in this recommendation, and the Court warns that a significantly higher sentence looms in the event of future violations.

## V.

Based on the foregoing, the Court **RECOMMENDS**:

1. Revocation and an eight-month term of imprisonment;

3. A term of supervised release to follow imprisonment under the conditions previously imposed at Docket Entry 627—thirty-six months on Count Two and twelve months each on Counts Thirteen and Sixteen, all three to run concurrently.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court

and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

This the 12th day of May, 2017.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge