UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:11-CR-15-GFVT-HAI-14 |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| THOMAS RAYMOND ENGLE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 950), the Court considers reported violations of supervised release conditions by Defendant Thomas "Ray" Engle.

**I.**

Judge Van Tatenhove entered a judgment against Defendant in October 2012 for conspiracy to distribute methamphetamine, conspiacy to retaliate against a government witness, and retaliation against a government witness. D.E. 627. He was sentenced to 54 months of imprisonment on each count (served concurrently), to be followed by six years of supervised release on the drug conspiracy count and three years each on the other two counts (served concurrently). *Id.* Defendant was first released on May 29, 2015.

In April 2017, the United States Probation Office ("USPO") reported that Defendant had violated his release conditions. *See* D.E. 910 at 2-3. First, a urine specimen tested positive for buprenorphine (a.k.a. suboxone), a Schedule III controlled substance. Second, during a follow-up

1

visit to the Probation Office, Defendant admitted snorting oxycodone, a Schedule II controlled substance. Third, he admitted during the same visit that he had taken suboxone again to manage his withdrawal symptoms from snorting oxycodone. Fourth, he refused to provide a urine specimen during this office visit. This conduct resulted in seven charged violations, and Defendant stipulated to all of them. *See id*. at 4. The parties jointly recommended a penalty of eight months of incarceration, followed by three years of supervised release. *Id*. The Court adopted this recommendation. D.E. 926. Defendant began his second term of supervised release on January 5, 2018. He was enrolled in substance abuse treatment from February 21 to May 31.

## II.

On July 26, 2018, the USPO submitted the Supervised Release Violation Report ("the Report") that initiated these proceedings. According to the Report,

> On July 22, 2018, the defendant was initially arrested by the Barbourville Police Department in Barbourville, Kentucky, on an active bench warrant for the defendant's failure to appear for an arraignment in Laurel County District Court, Case Number, 18-T-01310. A search incident to the arrest revealed several Gabapentin pills in the defendant's possession. The defendant was subsequently charged in Knox County District Court, Case Number, 18-M-00692, with Illegal Possession of a Legend Drug, in violation of Kentucky Revised Statute (KRS) 217.182(7), a Class B misdemeanor. . . . Under Title 902 of Kentucky Administrative Regulations (KAR) 55.015, having statutory authority under KRS 218A.020(1), and (3), Gabapentin is designated as a Schedule V Controlled Substance. The defendant's possession of Gabapentin constitutes conduct in violation of KRS 218A.1417, Possession of a Controlled Substance, Third Degree, a Class A misdemeanor.

The Report charges a single Grade C violation of two conditions—the conditions prohibiting the commission of another federal, state, or local crime and the condition prohibiting unlawful possession of a controlled substance.

On August 10, 2018, the USPO issued an Addendum to the Report. The Addendum

charges three additional violations. According to the Addendum,

> On July 25, 2018, the defendant reported to the probation office to discuss his recent arrest in Knox County District Court, Case Number, 18-M-00692. The defendant additionally provided a urine sample that was sealed, packaged, and prepared to send to Alere Toxicology Services for analysis. Prior to the collection of the urine sample, the defendant was questioned regarding any recent use of controlled substances, specifically Gabapentin. The defendant denied any recent use of Gabapentin or any other controlled substances. On August 9, 2018, a Drug Test Report was received from Alere Toxicology Services regarding the urine sample collected on July 25, 2018, which showed positive laboratory results for Gabapentin. As referenced in the previous Supervised Release Violation Report dated July 26, 2018, Gabapentin is designated as a Schedule V Controlled Substance under Kentucky Administrative Regulations (KAR) and Kentucky Revised Statute (KRS).

Violation #2 charges a Grade C violation of the condition prohibiting "unlawful use of a controlled substance." This violation is based on Defendant's use of Gabapentin, as evidenced by the positive drug screen.

Like Violation #1, Violation #3 charges a violation of the condition prohibiting commission of a crime and the condition prohibiting unlawful drug possession. Drawing on the Sixth Circuit's decision that use is equivalent to possession, this Grade C violation is based on Defendant's possession of Gabapentin, which is a Class A misdemeanor under Kentucky law.

Violation #4 charges a Grade C violation of the condition that Defendant "must answer truthfully" any question by the probation officer. This violation is based on Defendant's July 25, 2018 denial of having used Gabapentin.

Magistrate Judge Atkins conducted an initial appearance pursuant to Rule 32.1 on August 23, 2018, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 959. At the initial appearance, the United States moved for interim detention; Defendant did not argue for release. *Id*. Based on the heavy § 3143(a) defense burden,

the Court found that Defendant failed to justify release and remanded Defendant to the custody of the United States Marshal. *Id.*

At the final hearing on August 27, 2018, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 960. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all four violations. *Id.* Because Defendant admitted the factual basis for the violations, the government established all four violations under the standard of 18 U.S.C. § 3583(e). The parties argued for different sentences, with the government requesting nine months of incarceration followed by three years of supervised release, and the defense requesting eleven months of incarceration followed by one year of supervised release.

### III.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to a conspiracy to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1) and 846, which was enhanced to a Class B felony by virtue of a prior drug felony. He also pleaded guilty to the Class C felonies of conspiracy to retaliate against a government witness, 18 U.S.C. § 1513(f), and retaliation against a government witness, *id.* § 1513(b)(2). For a Class B felony, the maximum revocation sentence provided under § 3583 is three years of imprisonment. *See* 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would qualify as Grade C violations. Given Defendant's Criminal History Category of III (the category at the time of the

conviction in this District) and Grade C violation, Defendant's range, under the Revocation Table of Chapter 7, is five to eleven months.

A court also may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). One of Defendant's convictions is for participation in a drug trafficking conspiracy. Offenses under 21 U.S.C. § 846 carry no maximum supervised release period, meaning there is no maximum upon revocation either.

**IV.**

At the final hearing, the government recommended revocation with nine months of imprisonment, followed by a three-year term of supervised release. According to the government, this mid-Guidelines sentence was appropriate because this is Defendant's second revocation, and both revocations resulted from substance abuse. Then, as now, Defendant initially denied taking drugs, but then tested positive. This denial aggravated the breach of the Court's trust. On the other hand, the government stated, Defendant deserves credit for taking responsibility by pleading guilty to the violations. The government pointed out that a nine-month sentence (on Grade C violations) would be an incremental increase above his prior eight-month sentence (on a Grade B violation).

Concerning Defendant's history and characteristics, the government pointed out that his criminal history, including violent behavior and drug trafficking, is tied to his drug use. Thus, discouraging his drug use is important to protect the public.

Concerning additional supervised release, the government noted that Congress has a

5

policy of indefinite supervised release for drug traffickers to protect the public from the risk of further trafficking. As it argued at the last revocation, the government suggested that a three-year term would be long enough to "ensure he's on the path to being a law abiding citizen."

The defense argued that a shorter aggregate sentence than last time could be appropriate because the violations now before the Court are all Grade C, as opposed to a Grade B violation last time. The defense pointed out that, during his first period of release, he completed almost two years before violating. Defendant "wants to end the cycle" of supervision and revocation. Accordingly, the defense made the unusual move of recommending a longer sentence of incarceration in exchange for a shorter term of supervised release to follow. According to the defense, being compliant for one year is an "attainable" goal "in [Defendant's] mind." He was afraid of committing a "technical" violation if he was on supervision for three years. Defendant was willing "to do more time in prison to get out of the federal system faster." Thus, the defense requested eleven months of imprisonment, followed by twelve months of supervised release.

Defendant addressed the Court and asked for only one year on paper. He wants to "get all this federal stuff behind me," and stressed that he had not gotten in "big trouble" since his underlying conviction.

## V.

The Court has evaluated the entire record, including the Supervised Release Violation Report, Addendum, and accompanying documents, the argument presented at the final revocation hearing, and the sentencing materials from the underlying Judgment. The Court has considered all the § 3553 factors imported into the § 3583(e) analysis.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke

Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession).

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). Here, this is the second revocation for the same behavior—drug abuse accompanied by an initial denial but indicated by a urine test. And Defendant's continued lack of candor with his probation officer is a significant breach of the Court's trust.

The nature and circumstances of Defendant's underlying conviction are very troubling, particularly his violent behavior. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2001) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). According to the PSR, Defendant and two co-conspirators took the victim to a cemetery, where Defendant attacked the victim and kicked him wearing steel-toed boots. The victim suffered multiple external and internal injuries. Additionally, a methamphetamine trafficking conspiracy, such as the one involving Defendant, brings inherent dangers to any community. The seriousness of Defendant's conduct resulted in an upward variance from the Guidelines Range at sentencing.

Regarding Defendant's history and characteristics, he poses a clear risk of additional criminal conduct. Each instance of drug use is an additional federal felony, and the Court fears that bad decisions like using drugs could lead to other crimes of violence, given Defendant's history. This being his second revocation only reinforces this impression.

Another factor concerns the need for treatment. Here, the defense did not argue for treatment, so the factor is not particularly relevant.

The factors of deterring criminal conduct and protecting the public weigh heavily in this case. His drug abuse raises the specter of additional criminal conduct. This warrants a significant penalty, in addition to more time under the watchful eye of the USPO.

Another factor is the need to avoid unwarranted sentencing disparities. A sentence within the Guidelines Range is usually sufficient to address this concern. Here, the Court recommends a within-Guidelines sentence of ten months.

Defendant clearly needs additional supervision to protect the public from his potential for violence and to deter him from backsliding into further criminal drug use. However, the Court takes seriously the parties' concern that a too-lengthy term could be discouraging to him. The Court finds that two years is sufficient, but not greater than necessary to meet the § 3553(a) factors in this context. Defendant was compliant for almost two years once before. Another two-year term is thus achievable and it will give him time to adjust after prison and encouragement to avoid getting in trouble again. To be clear, the two-year term of supervised release is attached to Count Two of Defendant's Judgment—the drug conspiracy conviction, for which there is no maximum term of supervised release.

## VI.

Based on the foregoing, the Court **RECOMMENDS:**

(1)  That Defendant be found guilty of Violations #1, #2, #3, and #4.

(2)  Revocation with a term of imprisonment of ten months, to be followed by 24 months of supervised release under the same conditions previously imposed (D.E. 928).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record.

Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), **within fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 153-54 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 29th day of August, 2018.

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge